IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARK OSTERBACK,

    Plaintiff,

v.                                             CASE NO. 1:20-cv-84-AW-GRJ

MARK INCH, et al.

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("DOC") who is housed at Mayo Correctional Institution, initiated this case by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 and paying the filing fee. ECF Nos. 1, 4. The Complaint was filed on April 13, 2020, and stems from the conditions of confinement at Mayo CI during the current COVID-19 pandemic. ECF No. 1.

To summarize, Plaintiff contends that because Mayo CI is overcrowded the inmates are unable to practice effective "social distancing" in violation of State and Federal orders issued in response to the pandemic. Plaintiff alleges that failure to abide by such orders jeopardizes his health and places him in "extreme risk of contracting airborne pathogens such as COVID-19". According to Plaintiff, these conditions also violate the Florida

and U.S. Constitutions. Plaintiff contends that actions and/or inaction by prison and State officials fail to protect his health and amount to deliberate indifference in violation of the Eighth Amendment's proscription against cruel and unusual punishments. He asserts that the repeal of certain state regulations governing prison occupancy (which he conclusionally claims was accomplished through fraud and conspiracy) has allowed open-bay dorms to become overcrowded, creating unnecessary exposure to airborne pathogens such as COVID-19. *See* ECF No. 1 at 11 (Plaintiff's summary of his claims for declaratory and injunctive relief). He alleges elsewhere in his Complaint that Mayo CI medical facilities are "woefully inadequate" to handle a COVID-19 outbreak. *Id.* at 9.

The named Defendants are Florida Department of Corrections ("DOC") Secretary Mark S. Inch, Mayo CI Warden Amelia Hill, and Florida Surgeon General Scott A. Rivkees, all of whom are sued in their official capacity. *Id.* at 1-2. For relief, Plaintiff seeks a declaratory judgment affirming his assertions about the prison conditions and his risk of exposure to COVID-19, temporary injunctive relief prohibiting bunk spacing of less than six feet and prohibiting overcrowding of open population dorms where effective social distancing and other hygienic measures cannot be supervised and enforced due to a staffing shortage, and a permanent injunction requiring Defendants

to comply with sanitary fixture-to-inmate ratios as set forth in the state regulations prior to repeal.  ECF No. 1 at 11.

This case is now before the Court on Defendants' motions to dismiss the Complaint on several grounds, including for failure to state a claim for relief, for naming incorrect parties, for lack of standing, for failure to satisfy the requirements for seeking injunctive relief, and for failure to exhaust administrative remedies before filing the Complaint, as required by the Prison Litigation Reform Act ("PLRA").  ECF Nos. 13, 26.  Plaintiff has filed responses in opposition to the motions.  ECF Nos. 29, 33. Upon due consideration of the parties' arguments and for the following reasons, it is respectfully recommended that the Complaint be dismissed because Plaintiff failed to exhaust administrative remedies before filing the Complaint, and recent Eleventh Circuit authority makes clear that dismissal is required under the circumstances presented.[1]

## I. ADMINISTRATIVE EXHAUSTION UNDER THE PLRA

Under § 1997e(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

---

[1] *Swain v. Junior*, 961 F.3d 1276, 1292 (11th Cir. 2020) (district court abused its discretion in granting preliminary injunctive relief concerning detention center's COVID-19 measures, in part because the lower court failed to consider defendants' argument that plaintiffs' claims were unexhausted).

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a); *see also Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock*, 549 U.S. 199, 211 (2002). The requirement to exhaust "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In a recent case addressing the effect of the COVID-19 pandemic on prisoners, the Eleventh Circuit held that district courts cannot grant preliminary injunctive relief without considering whether a prisoner has exhausted administrative remedies before filing suit. In *Swain v. Junior*, seven inmates filed a class action complaining about the alleged inadequate measures implemented at a Miami detention center during the coronavirus outbreak. 958 F.3d 1081, 1085 (11th Cir. 2020). The district court entered an injunction that required the defendants to employ various safety measures to prevent the spread of the virus and imposed numerous reporting requirements. *Id.* The defendants moved for a stay pending appeal. *Id.* The Eleventh Circuit granted the stay, holding that before a district court grants a

preliminary injunction, it should consider whether the plaintiffs exhausted administrative remedies before they filed the lawsuit. *Id.* at 1092. "So long as those remedies are 'available' to the prisoner, a 'court may not excuse a failure to exhaust, even to take [special] circumstances into account.' " *Id.* (citing *Ross v. Blake*, ___U.S. ___, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016)).

The Eleventh Circuit subsequently held that the district court abused its discretion in granting the preliminary injunction, in part because the lower court failed to consider exhaustion. *Swain v. Junior*, 961 F.3d 1276, 1292 (11th Cir. 2020). The Court reiterated that " '[u]exhausted claims *cannot be brought* in court'" pursuant to the PLRA. *Swain,* 961 F.3d at 1292 (quoting *Jones*, 549 U.S. at 211) (emphasis in original). Thus, the plaintiffs in *Swain* could not show a substantial likelihood of success on the merits of their claims—a mandatory prerequisite to the grant of a preliminary injunction—if they failed to exhaust administrative remedies prior to filing suit. *Id.*; *see Valentine v. Collier*, 978 F.3d 154, 160–62 (5th Cir. 2020) (granting stay of injunction that required prison to undertake COVID-19 measures where plaintiffs failed to first exhaust administrative remedies, holding that "[p]laintiffs' failure to exhaust their administrative remedies before filing suit is fatal"); *motion to vacate stay denied* ___ U.S. ___, 141 S.Ct. 57 (2020); *see*

*also Lindsey v. Colon,* 2020 WL 5981851, at *3 (S.D. Fla. Oct. 8, 2020) (dismissing inmate's complaint about prison's response to COVID-19 pandemic at screening stage for failure to exhaust); *Brown v. Colon*, 2020 WL 5653963, at *2 (S.D. Fla. Sept. 23, 2020) (same); *Johnson v. White*, 2020 WL 4194990, at *3 (M.D. Ga. July 21, 2020) (same); *Askew v. White*, 2020 WL 4194994, at *3 (M.D. Ga. July 21, 2020) (same);

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008.) Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step analysis as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure

to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211–12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts"). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step).

In Florida, the procedural rules an inmate must follow in order to properly exhaust administrative remedies are promulgated by the Florida Department of Corrections and contained in the Florida Administrative Code. See Fla. Admin. Code Chapter 33-103 ("Inmate Grievances").

To properly grieve an issue, an inmate must file a written informal grievance using Form DC6-236, (Rule 33–103.005). If the inmate is dissatisfied with the result of the informal grievance, he must next file a written formal grievance with the Warden's office using Form DC1-303, (Rule 33–103.006). Finally, if the inmate feels that the grievance has still not been satisfactorily resolved, he must submit a written appeal to the State Office of the Secretary ("Central Office") using Form DC1-303. (Rule 33–103.007).

*See e.g. Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). (Rules 33-103.005, 33-103.006, and 33-103.007).

The rules also establish strict time frames for inmates to file grievances. Pursuant to Rule 33-103.011 ("Time Frames for Inmate Grievances"), informal grievances must be received "within 20 days of the when the incident or action being grieved occurred," and formal grievances (including direct formal grievances of a medical nature) must be received "no later than 15 calendar days" from either: (1) the date on which the informal grievance was responded to; or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed. (Rule 33-103.011(1)(a), and (b)). Direct grievances to the Central Office must also be received within 15 days from the date on which the incident or action being grieved occurred. (*See* Rule 33-103.011(1)(d)).

Grievance appeals to the Office of the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." Rule 33-103.011(1)(c). To eliminate issues with mailing, the rules make provisions for appeals to the Secretary to be receipted locally at the institution/facility. *See* Rule 33-103.006(8).

## II. **DISCUSSION**

In support of the motions to dismiss on the ground that Plaintiff failed to

exhaust administrative remedies, Defendants offer the affidavit of Clayton E. Smith III, an Assistant Warden and custodian of classification records at Mayo CI.  ECF No. 13-1 at 1; ECF No. 27-1 at 1.  Mr. Smith's affidavit states:

> I have reviewed the available grievance records kept at Mayo CI filed by inmate Mark E. Osterback (FDC #745238) from January 1, 2020 to June 8, 2020.  The records reflect that there are no informal or formal grievances filed by inmate Osterback during the searched time period related to COVID-19, social distancing, overcrowding, or inadequate medical facilities.

*Id.*

Plaintiff does not dispute that this is true.  In opposition, Plaintiff contends that "the issues have been exhausted by Plaintiff . . . and others". ECF No. 29 at 14.  For support, he points to grievances that he filed at Sumter CI in 2009, grievances that he filed at Mayo CI in 2016, and grievances filed in the past by other inmates at other prisons.  *See id.*; Exhibits AA-LL.  He also contends that he administratively exhausted claims regarding staff shortages and overcrowding while he was confined at Hamilton CI.  *Id.* n.19.

It is undisputed that Plaintiff has an extensive history of challenging the conditions in Florida's prisons both administratively and in state and federal courts. It is obvious, however, that the gravamen of the instant complaint is the risk of harm Plaintiff currently faces at Mayo CI under the unique

circumstances of the COVID-19 pandemic.  *See* ECF No. 1.  Plaintiff frames his complaints about overcrowding and staffing shortages squarely within the context of the particular challenges posed by the pandemic and the Defendants' alleged inability to effectively implement the COVID-19 measures required by state and federal executive orders at Mayo CI.  *Id.*; *see* ECF No. 29 at 5; ECF No. 33 at 2 n.2 ("The gist of Plaintiff's claim is not that Defendants are violating the state and federal executive orders on social distancing, but rather that over the last three decades, they have permitted housing units in the Dept. of Corrections to be constructed and maintained contrary to the provisions of 64E-266and § 944.023, Fla. Stat., which overcrowds their interior space, *making enforcement of these executive orders impossible, and placing Plaintiff in jeopardy of contracting infectious diseases, including Covid-19*.") (emphasis added)).  The relief sought by Plaintiff in this case is specific to addressing the COVID-19 pandemic: he seeks a declaration that overcrowding precludes "social distancing" in violation of state and federal COVID-19 orders thereby placing him at risk of contracting COVID-19, and he seeks to enjoin Defendants from spacing bunks closer than six feet or housing inmates in open population dorms where social distancing cannot be enforced.  ECF No. 1 at 11.

It defies logic, and is contrary to the purposes of the PLRA's

exhaustion requirement, to suggest that grievances which predate the COVID-19 pandemic by many years are sufficient to exhaust claims that arise directly from the specific risks posed by the pandemic and from State officials' alleged inability to implement measures designed to slow the spread of the disease. "A prisoner must exhaust his administrative remedies as to *each claim* and *each party* set forth in his complaint." *Rodriguez v. Inch*, 2020 WL 3052517, at *6 (N.D. Fla. May 6, 2020), *report and recommendation adopted* 2020 WL 3050231 (N.D. Fla. June 8, 2020) (citing *Martinez v. Minnis*, 257 F. App'x 261, 265 n. 5 (11th Cir 2007)); *see also Vandiver v. Martin,* 48 Fed.Appx. 517, 519 (6th Cir. 2002) ("The exhaustion requirement would be defeated if an inmate were permitted to raise additional issues and name additional defendants in a § 1983 action that were never mentioned in the grievance.").

On this record, at the first step of the *Turner v. Burnside* analysis, there is no conflict with respect to the exhaustion issue because Defendants' evidence shows that Plaintiff has not filed any administrative remedies concerning the prison's response to the COVID-19 pandemic since the pandemic began and Plaintiff's evidence reflects the same. Plaintiff's failure to do so is fatal to his claims, and Defendants are entitled to have the complaint dismissed for failure to exhaust administrative remedies. *See*

*Turner,* 541 F.3d at 1082; *Swain,* 961 F.3d at 1292 ("'district court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his administrative remedies'"); (quoting *Chandler*, 379 F.3d at 1286); *Valentine*, 978 F.3d at 162 (failure to exhaust claims relating to pandemic is "fatal" to request for injunctive relief).  Because the PLRA bars Plaintiff from asserting the claims in his Complaint, and dismissal is without prejudice to Plaintiff's right to re-file his claims after first exhausting administrative remedies, it is unnecessary to address the Defendants' remaining grounds for dismissal.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motions to Dismiss, ECF Nos. 13 and 26, should be **GRANTED** and this case **DISMISSED** without prejudice for failure to exhaust administrative remedies.

**IN CHAMBERS** this 25th day of February 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.